Alan Alexander Beck (Haw. Bar No. 9145)
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, California 92123
(619) 905-9105
alan.alexander.beck@gmail.com

Benjamin E. Lowenthal (Haw. Bar No. 8645)
Law Office of Benjamin E. Lowenthal, LLC
1001 Bishop Street, Suite 2210
Honolulu, Hawaiʻi 96813
(808) 766-8247
benjamin@bellawyer.com

Attorneys for Plaintiff
David Janeway

In the United States District Court

District of Hawaiʻi

| | |
|---|---|
| David Janeway,<br>Plaintiff,<br><br>vs.<br><br>County of Hawaiʻi,<br>Defendant. | Case No. ___________________<br><br>Verified Complaint for Declaratory and Injunctive Relief. |

**Verified Complaint for Declaratory and Injunctive Relief**

Comes now, the Plaintiff, David Janeway, by and through his undersigned counsels, and complaints of the Defendant as follows:

**Introduction**

1. The question presented by this case is whether the County of Hawaiʻi

can deny Plaintiff Janeway a permit to acquire based upon a dismissed felony charge for burglary in 1997 which never led to a conviction.

2. Accordingly, Plaintiff Janeway brings this challenge to the County's denial of Mr. Janeway's permit to acquire application and the County's misapplication of HRS § 134-7.

## I. The Parties

3. Plaintiff David Janeway, (hereinafter "Janeway"), is an adult male resident of the State of Hawai'i, resides in the County of Hawai'i, and is a citizen of the United States;

4. Defendant County of Hawaii, (hereinafter "County"), is a municipal corporation incorporated under the laws of the State of Hawai'i. Hawai'i County is authorized by law to control and maintain the Hawai'i Police Department, an agency of the County, who acts on County's behalf in the area of law enforcement. The County is ultimately responsible for the Hawai'i Police Department, (hereinafter "HPD"), and their actions, and therefore, must assume the risks incidental to the maintenance of HPD, their employees, laws, customs and policies. Hawai'i County can be served by serving the Department of the Corporation Counsel, Hawai'i County at 101 Aupuni Street, # 325, Hilo, Hawai'i 96720;

## II. Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988;

6. Venue lies in this Court pursuant to 28 U.S.C. § 1391;

## III. Statement of Facts

7. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.";

8. The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 1027 (2016);

9. The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald*, 561 U.S. at 787. "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582.

10. The Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen* found "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its

regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." 597 U.S. 1, 24 (2022) (citation omitted);

11. Hawai'i state law requires that a citizen obtain a permit in order to acquire a firearm, a "PTA":

12. Haw. Rev. Stat. Ann. § 134-2 reads "(a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section. When title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of the firearm; provided that upon presentation of a copy of the death certificate of the owner making the bequest, any heir or legatee may transfer the inherited or bequested firearm

directly to a dealer licensed under section 134-31 or licensed by the United States Department of Justice without complying with the requirements of this section."

13. HRS § 134-7(b) states "No person who is being prosecuted for one or more charges for a felony, a crime of violence, a criminal offense relating to firearms, or an illegal sale or distribution of any drug in a court in this State or elsewhere, or who has been convicted in this State or elsewhere of having committed a felony, a crime of violence, a criminal offense relating to firearms, or an illegal sale or distribution of any drug shall own, possess, or control any firearm or ammunition."

14. No portion of the Hawai‘i Revised Statutes prohibits possession of firearms for dismissed charges.

## V. The Plaintiff

15. David Janeway is a resident of the County of Hawai‘i and a United States citizen;

16. He has lived in Hawai‘i County for 23 years.

17. He worked as a trauma center health care worker for 35 years.

18. He is currently retired.

19. He has never been treated for mental illness.

20. He does not abuse alcohol or use drugs.

21. He is not disqualified under federal or Hawaiʻi state law from acquiring, owning or possessing a firearm;

22. He has completed all necessary state and county administrative requirements to obtain a PTA;

23. On December 17, 2012, Janeway applied for and was subsequently granted a permit to acquire a firearm.

24. He subsequently legally purchased a shotgun and owned it for purposes of lawful self-defense up until his permit to acquire denial in 2026 as discussed below.

25. On March 17, 2026, Janeway applied for a permit to acquire a new firearm;

26. He planned on acquiring a firearm to own to use lawful for self-defense.

27. He subsequently received a letter from the HPD dated May 3, 2026, which denied his permit to acquire application "due to a felony burglary charge in 1997." *See* Exhibit ("Ex.") A.

28. The letter also informed Janeway that he needed to dispose of any firearms and ammunition he had in his possession by May 27, 2026, or face criminal penalties. *Id.*

29. Before May 27, 2026, Janeway transferred possession of his firearm

and ammunition to a firearm dealer located in Hawai‘i County.

30. The “felony burglary charge in 1997” refers to an incident in Fresno, California, where Janeway previously lived. Janeway removed his unresponsive ex-wife from her friend’s house and took her to the hospital for acute alcohol intoxication.

31. As a result of this incident, on November 19, 1997, Janeway was arrested for burglary, corporal injury to a spouse or cohabitant, and attempted kidnapping. *See* Ex. B.

32. On November 21, 1997, Janeway was released on bail. Ex. C.

33. On November 21, 1997, Janeway went to the municipal court in Fresno, County. He reached a plea agreement with the State. Ex. D.

34. Janeway pleaded guilty to a misdemeanor in exchange for dismissal of the felony offense. He also agreed that as part of his sentence he would attend and complete therapeutic counseling; upon completion of his counseling, he would be able to set aside his guilty plea, enter a plea of not guilty, and the case would ultimately be dismissed. *Id.*

35. The municipal court adopted the plea agreement, accepted Janeway’s guilty plea for the misdemeanor, and dismissed the felony. *See* Ex. E.

36. On December 17, 1997, Janeway was sentenced under the terms of the agreement. Ex. F.

37. On June 3, 1998, Janeway returned to court. He presented evidence that he had completed counseling under the terms of the agreement. The court set aside the guilty plea and Janeway entered a plea of not guilty. Ex. G.

38. At that hearing, the State moved to dismiss the case and the motion was granted. *Id.* Plaintiff Janeway has no convictions on his record.

39. There is no statutory basis under Hawaiʻi law prohibiting Janeway from owning a firearm due to this incident.

40. Janeway has never been involved in any other incident involving law enforcement which would prohibit him from firearm ownership under either Hawaiʻi or federal law.

41. The County's denial of his firearms permit was done without statutory authority and constitutes an independent municipal action.

42. This case is very similar to other cases that have been litigated against the County. *See Day v. Cnty. of Hawaiʻi*, 1:23-cv-00576-LEK-RT Doc. No. [19] (stipulated injunction regarding the County's concealed carry permit policies); *Shiroma v. Hawaiʻi Cnty*., 1:25-CV00181 JAO-WRP Doc. No. [23] (stipulated injunction prohibiting the County from enforcing a lifetime ban on firearm ownership for misdemeanor crime without statutory authority).

## VI

**Count 1**
**(U.S. CONST., AMEND. II As Made Applicable to the States by U.S. CONST., AMEND. XIII)**

43. Plaintiff repeats and realleges the allegations of all preceding Paragraphs above, as if set forth verbatim herein;

44. The Second Amendment to the United States Constitution states, in pertinent part, that "the right of the people to keep and bear arms, shall not be infringed." The Second Amendment further "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008);

45. As the Court subsequently held in *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010): "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."

46. The Supreme Court in *New York State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1 (2022) holds that restrictions on Second Amendment rights must be justified through the use of historical laws that similarly restricted firearms usage;

47. First, a court must determine whether the challenged law falls within the plain text of the Amendment's language by asking whether the law applies to "the people" (i.e., all members of the political community) and restricts the

"keep[ing]" (i.e., possession) or "bear[ing]" (i.e., carrying) of "Arms" (i.e., weapons customarily used for offensive or defensive purposes). If a challenged law falls within the plain text, it is presumptively unconstitutional—which means that it may violate the preexisting right that the Amendment codified. But the government may show that its challenged law did not infringe the historical understanding of the codified right." *Wolford v. Lopez*, 146 S. Ct. 2032, 2038 (2026).

48. "Because restrictions on ammunition may burden the core Second Amendment right of self-defense and the record contains no persuasive historical evidence suggesting otherwise, section 613.10(g) regulates conduct within the scope of the Second Amendment." *Jackson v. City & County of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014). While we have not defined "the precise scope" of protected ancillary rights, we have held "that the plain text of the Second Amendment only prohibits meaningful constraints on the right to acquire firearms." *Nguyen v. Bonta*, 140 F.4th 1237, 1241 (9th Cir. 2025).

49. The County's denial of Janeway's permit to acquire and order to dispose of his firearm and ammunition implicates the plain text of the Second Amendment because it removes his ability to keep arms and ammunition for lawful self-defense.

50. Therefore, the burden is on the County to justify its denial of Janeway's permit to acquire and its order for him to dispose of his firearms and ammunition.

51. There is no historical basis for denying firearm rights due to a dismissed charge.

52. Historically, a judicial determination of dangerousness was required to remove someone's Second Amendment rights.

53. "[T]he people in this country have understood from the start that the government may disarm an individual temporarily after a "judicial determinatio[n]" that he "likely would threaten or ha[s] threatened another with a weapon." *United States v. Rahimi,* 602 U.S. 680, 711 (2024).

54. There is no historical tradition of disarming someone without a judicial determination of some sort.

55. Therefore, the County's denial of Janeway's permit to acquire and requirement that he dispose his firearms and ammunition violates the Second Amendment.

56. The County's conduct is unconstitutional because they confer upon the Chief impermissible discretion to decide who is suitable to own a firearm.

57. Therefore, even if HPD could rely upon conduct which has not been judicial determined to be true because they confer upon the Chief impermissible discretion.

58. The County also violates the Second Amendment because County's conduct is ultra vires;

59. Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007);

60. *Bruen* commands that government may not have discretion in making determinations on Second Amendment rights. *See Bruen*, 597 U.S. at 38 n. 9. (prohibiting governments from engaging in the "appraisal of facts, the exercise of judgment, and the formation of an opinion)";

61. The County's denial of Janeway's permit to acquire and requirement is ultra vires because the County does not have statutory authority to deny permits based on dismissed charges.

62. This ultra vires conduct constitutes impermissible discretion pursuant to *Bruen*.

63. Thus, the County's conduct violates the Second Amendment on these grounds as well;

64. The challenged County action violates the Second Amendment,

**Count 2**
**(Declaratory Judgment)**

65. Plaintiff repeats and realleges the allegations of Paragraphs above, as if set forth herein;

66. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a);

67. Absent a declaratory judgment, there is a substantial likelihood that Janeway will suffer irreparable injury in the future;

68. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

69. This Court possesses an independent basis for jurisdiction over the parties;

70. Janeway requests a declaratory judgment declaring that Defendant's laws, customs, rules, habits and policies of taking forty days or more to issue PTA which deny Janeway the right to own, possess and or acquire, a firearm violates Janeway's Second Amendment rights;

WHEREFORE, Janeway seek declaratory and injunctive relief as set forth below;

## VIII. Prayer for Relief

**WHEREFORE**, Plaintiff requests that judgment be entered in their favor and against Defendant as follows:

1. An order preliminarily and permanently compelling the County, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, to process and

approve Janeway's permit to acquire;

2. An order preliminarily and permanently compelling the County, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction to not deny Janeway the right to ability to own firearms and ammunition based on dismissed charges.

3. Declare that County's denial of Janeway's permit to acquire violates the Second Amendment;

4. Award nominal damages;

5. Award compensatory damages;

6. Award costs of the suit, including attorneys' fees and costs pursuant to 42 U.S.C. §1988;

7. Such other relief consistent with the injunction as appropriate; and

8. Such other further relief as the Court deems just and appropriate.

DATED: Honolulu, Hawaii, September___, 2026.

Respectfully submitted,

s/ Alan Alexander Beck

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, California 92123

(619) 905-9105
Alan.alexander.beck@gmail.com
Haw. Bar No. 9145

s/ Benjamin Lowenthal
Benjamin E. Lowenthal
Law Office of Benjamin E. Lowenthal, LLC
1001 Bishop Street, Suite 2210
Honolulu, Hawai‘i 96813
(808) 766-8247
Benjamin@bellawyer.com
Haw. Bar No. 8645

## VERIFICATION

I, David Janeway, declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on Sept 11, 2026

David Janeway