Alan Alexander Beck (Haw. Bar No. 9145)
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, California 92123
(619) 905-9105
alan.alexander.beck@gmail.com

Benjamin E. Lowenthal (Haw. Bar No. 8645)
Law Office of Benjamin E. Lowenthal, LLC
1001 Bishop Street, Suite 2210
Honolulu, Hawai‘i 96813
(808) 766-8247
benjamin@bellawyer.com

Attorneys for Plaintiff
David Janeway

In the United States District Court

District of Hawai‘i

| | |
|---|---|
| David Janeway,<br>Plaintiff,<br><br>vs.<br><br>County of Hawai‘i,<br>Defendant. | 1:26-cv-483<br><br>Memorandum in Support of Motion for Preliminary Injunction. |

**Memorandum in Support of Motion for Preliminary Injunction**

## Table of Contents

1. Introduction . . . . . . . . . . 1

2. Statement of Facts . . . . . . . . . . 2

3. Standard for a Preliminary Injunction . . . . . . . . . . 4

4. The County is Liable Pursuant to *Monell* . . . . . . . . . . 5

4.1. Mr. Janeway has a strong likelihood of success on the merits . . . . . . . . . . 5

4.2 Mr. Janeway's conduct is covered by the Second Amendment's plain text . . . . . . . . . . 6

5. Mr. Janeway cannot be permissibly disarmed because he has not had a judicial determination that he is unsuitable to possess a firearm . . . . . . . . . . 8

6. The County's denial is an ultra vires act and thus violates the Second Amendment due to footnote nine in *Bruen* . . . . . . . . . . 12

7. Mr. Janeway will suffer irreparable harm . . . . . . . . . . 17

8. Granting the TR/PI is in the public interest and serves equity . . . . . . . . . . 18

9. Waiver of bond is proper and appropriate under these circumstances . . . . . . . . . . 19

10. This Court should consolidate pursuant to Rule 65(a)(2) . . . . . . . . . . 19

11. Conclusion . . . . . . . . . . 20

## Table of Authorities

### Statutes and Rules

Haw. Rev. Stat. § 134-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

Haw. Rev. Stat. § 134-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 922(g)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Fed. R. Civ. Pro. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

### Cases

*Allen v. District of Columbia*, Civil Action No. 20-cv-2453 (TSC),
2023 U.S. Dist. LEXIS 60950 (D.D.C. Mar. 31, 2023) . . . . . . . . . . . . . . . . . .11

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) . . . . . . . .4

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . .4, 17, 18

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007) . . . . . . . . . . . . . .12

*District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . .6

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) . . . . . . . . . . . . . . .18

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC,
2020 U.S. Dist. LEXIS 169794 (D. Mont. Sep. 16, 2020) . . . . . . . . . . . . . . .20

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018) . . 19

*Epona, LLC v. Cty. of Ventura*, 876 F.3d 1214 (9th Cir. 2017) . . . . . . . . . . . . . . . . .15

*Ezell v. City of Chi.,* 651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . .17

*Fisher v. Kealoha*, 976 F. Supp. 2d 1200 (D. Haw. 2013) . . . . . . . . . . . . . . . . . . . . 10

*Fisher v. Kealoha,* 2012 U.S. Dist. LEXIS 90734, 2012 WL . . . . . . . . . . . . . . . . . .17

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gadomski v. Tavares*, 113 A.3d 387 (R.I. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Guido v. Suffolk Cnty.,* 2026 U.S. Dist. LEXIS 190377 (2026) . . . . . . . . . . . . . . . . 13

*Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . .15

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . 18

*Lakewood v. Plain Dealer Pub. Co*., 486 U.S. 750 (1988) . . . . . . . . . . . . . . . . . . . . .15

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . 17

*Mosby v. Devine*, 851 A.2d 1031 (R.I. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022) . . . . . . . . . . . . .1, 2, 6, 12

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Zerillo*, 219 Mich. 635 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 16

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Schware v. Bd. of Bar Exam. of State of N.M.,* 353 U.S. 232 (1957) . . . . . . . . . . . . .10

*Srour v. New York City*, 699 F. Supp. 3d 258 (2023) . . . . . . . . . . . . . . . . . . . . . . . . .13

*Stokes v. United States DOJ*, 551 F. Supp. 3d 993 (N.D. Cal. 2021) . . . . . . . . .11 n. 1

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) . . . . . . . .11 n. 1

*United States v. Debrow*, 2026 U.S. App. LEXIS 21976 (2026) . . . . . . . . . . . . . . . .12

*United States v. Duarte*, 137 F.4th 743 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hemani*, 146 S. Ct. 1677 (2026) . . . . . . . . . . . . . . . . . . . . . . 5-6, 8, 9

*United States v. McMichael*, 350 F. Supp. 3d 647 (W.D. Mich. 2018) . . . . . . 11 n. 1

*United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) . . . . . . . . . . . . . . . . . 9

*United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . 11 n. 1

*Utz v. Cullinane*, 520 F.2d 467 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . .18

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2019) . . . . . . . . . . 19

*Webb v. Sloan*, 330 F.3d 1158 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Wolford v. Lopez*, No. 24-1046, 609 U.S. --- (2026) . . . . . . . . . . . . . . . . . . . . . . 7-8

**Other Authorities**

Charles Alan Wright et al., Federal Practice and Procedure (2d ed. 1995) . . . . . . . .17

## 1. **Introduction**

David Janeway applied for a permit to acquire a firearm with the County of Hawai‘i. The County denied his application citing “a felony *charge* of burglary in 1997.” *See* Ex. A. The County also ordered Mr. Janeway to promptly dispose of his existing firearms pursuant to Hawai‘i Revised Statutes § 134-7. But that statute does not extinguish Mr. Janeway’s constitutional rights to firearms.

True, nearly thirty years ago, Mr. Janeway was charged with burglary. But the charge does not in and of itself does not bar Mr. Janeway from acquiring and keeping firearms for his self-defense and protection. The charge never resulted in a conviction on Mr. Janeway’s record. And HRS § 134-7 only denies firearms rights to those either currently being prosecuted or those who have been convicted of specific crimes. The County’s denial is unsupported by state law.

The County’s denial of Mr. Janeway’s permit to acquire and the order to dispose his firearms is an independent act of the County. Pursuant to *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022), the County’s conduct is unconstitutional as applied to Mr. Janeway because no historical practice prohibits individuals from Second Amendment rights for merely being charged with a crime that was later dismissed altogether. Historically, only those that received some form of judicial determination of dangerousness could have their firearm rights removed.

The County's conduct also violates the Second Amendment because it gives the HPD impermissible discretion in denying Mr. Janeway's permit. This is because the County's actions are ultra vires. This ultra vires conduct constitutes impermissible discretion pursuant to *Bruen*. And because Mr. Janeway fulfills all other grounds for a preliminary injunction, he respectfully requests this Court enter a preliminary injunction ordering the County of Hawaii to process his permit to acquire without using dismissed charges as a basis to deny him and to revoke the letter which ordered him to dispose of his firearms.

## 2. <u>Statement of Facts</u>

Mr. Janeway lived in Fresno, California with his ex-wife nearly thirty years ago. Complaint ¶ 30. On the night of November 19, 1997, Mr. Janeway removed his unresponsive ex-wife from a friend's house and took her to a hospital for acute alcohol intoxication. Complaint ¶ 30. He was later arrested under suspicion of burglary, corporal injury to a spouse or cohabitant, and attempted kidnapping. Complaint ¶ 31. Days later, he was released on bail. Complaint ¶ 32.

On November 21, 1997, Mr. Janeway appeared in the municipal court in Fresno. Complaint ¶ 33. He entered into a plea agreement with the State. Complaint ¶ 33. The State dismissed felony charges and Mr. Janeway pleaded guilty to a misdemeanor offense. Complaint ¶ 34; Ex. D and Ex. E. As part of the plea agreement, Mr. Janeway agreed to take counseling classes and if successfully

completed those classes, the misdemeanor offense would be dismissed. Complaint ¶ 34; Ex. D.

The court adopted the plea agreement. Complaint ¶ 35; Ex. F. Six months later, Mr. Janeway returned to court after complying with the conditions of the sentence. Complaint ¶ 37; Ex. G. The court set aside his guilty plea and he re-entered a not guilty plea. Complaint ¶ 37. The State then moved to dismiss the charges and the court granted the motion. Complaint ¶ 37. Mr. Janeway is qualified under both state and federal law to own a firearm. Complaint ¶¶ 21.

Mr. Janeway subsequently moved to the Big Island. Complaint ¶ 16. He worked as trauma center health care worker for 35 years. Complaint ¶ 17. He has never been treated for a mental illness and does not abuse alcohol or drugs. Complaint ¶¶ 19, 20. He is currently retired.

In 2012, Mr. Janeway applied for a permit to acquire a firearm with the County. Complaint ¶ 23. The County granted the permit and Mr. Janeway lawfully purchased a shotgun. He owned it for self-defense purposes. Complaint ¶ 24.

On March 17, 2026, Mr. Janeway applied for a permit to acquire a new firearm for self-defense purposes. Complaint ¶ 25. On May 3, 2026, the County denied his permit on the grounds that he had "a felony burglary charge in 1997." Ex. A. The County also ordered Mr. Janeway to dispose of any firearms and ammunition that he had in his possession by May 27, 2026. Ex. A. Prior to May 27,

2026, Mr. Janeway transferred possession of his shotgun and ammunition to a firearms dealer in Hawaii County. Complaint ¶ 29. This lawsuit follows.

### 3. **Standard for a Preliminary Injunction**

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.* "It is "always in the public interest to prevent the violation of a party's constitutional rights."" *Id* (quoting *Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707, 731 (9th Cir. 2022)). "An individual's right to carry a handgun for self-defense outside the home under the Second Amendment is one such constitutional right." *Id*. Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

### 4. The County is Liable Pursuant to Monell

The County of Hawaiʻi is liable for violating Mr. Janeway's Second Amendment rights. "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978) (footnotes omitted). "A municipality can be liable even for an isolated constitutional violation, however, when the person causing the violation has final policymaking authority." *Webb v. Sloan*, 330 F.3d 1158, 1164 (2003).

Here, Mr. Janeway's denial letter was authorized and signed by Chief of Police for Hawaiʻi County Reed K. Mahuna. *See* Ex. A. Chief Mahuna is the final decision maker when it comes to permit to acquire. *See* HRS § 134-2 ("No person shall acquire the ownership of a firearm […] until the person has first procured from the chief of police of the county of the person's […]residence.") Thus, pursuant to *Monell*, the County is directly liable for any violation of Mr. Janeway's Second Amendment rights.

### 4.1 Mr. Janeway Has a Strong Likelihood of Success on the Merits

"The Second Amendment protects the right of "all Americans" to keep and bear firearms for self-defense." *United States v. Hemani*, 146 S. Ct. 1677, 1681

(2026). To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

### 4.2 Mr. Janeway's conduct is covered by the Second Amendment's plain text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Id* at 2. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008).

Here, Mr. Janeway is one of the people because he is "member[] of the

political community." *Wolford v. Lopez*, No. 24-1046, 609 U.S. ---, at *10, (June 25, 2026) (quoting *Heller*, 554 U. S. at 580.). In this Circuit, even felons are considered part of the people. *See United States v. Duarte*, 137 F.4th 743, 754-755 (2025) ("we hold that Duarte's status as a felon does not remove him from the ambit of the Second Amendment; he is one of "the people" who enjoys Second Amendment rights."). There is no argument that Mr. Janeway is not one of the people pursuant to both Supreme Court and Circuit precedent.

"*Bruen* identified three important inquiries that courts should undertake in evaluating proffered analogues. The first is the number of jurisdictions in which they were adopted." *Wolford*, 609 U.S. ---, at *7. "The second is the extent to which they were well-accepted. This acceptance may be express, as when judicial decisions explicitly acknowledged the rule's legality. Or the acceptance may be tacit, as when a restriction on the keeping or carrying of arms was "open, widespread, and unchallenged.' " *Id* at 11 (quoting *Bruen*, 597 U. S. at 36. "The third is whether any analogue or collection of analogues is "relevantly similar" to the modern law." *Id.* "Determining whether this condition is met requires consideration of "how" the analogue restricted the keeping or bearing of arms—that is, whether it imposed a restriction similar to that imposed by the challenged law. Ibid. And a court must also consider "why" the analogue restricted the keeping or bearing of arms—that is, whether its rationale was similar to that of the new

law." *Id*.

### 5. Mr. Janeway Cannot be Permissibly Disarmed Because He Has Not Had A Judicial Determination that he is Unsuitable to Possess a Firearm

Mr. Janeway's permit to acquire denial is unconstitutional because there is no historical basis for disarming a person for a charge which has been dismissed. Historically, only those that were judicially determined to be prohibited from firearm ownership. *Hemani*, 146 S. Ct. 1677 (2026), supports Plaintiff's position. *Hemani* dealt with a challenge to 18 U.S.C. § 922(g)(3) which prohibits habitual drug users from owning firearms. The government argued that the statute was "relevantly similar" to founding-era laws providing for the arrest and detainment of "habitual drunkards." *Id.* at *6. Those historical laws, reasoned the government, "operated in practice much like [the challenged statute] works—the former allowed governments to detain people in places where they could not bear arms while [the challenged statute] temporarily disarms unlawful users." *Id.* The Court rejected this analogy, in part because the habitual-drunkard laws of old "usually provided some form of process before an individual lost any of his liberties, even temporarily." *Id.* at *10. "Normally, a vagrant could be sent to a workhouse or jail only upon a 'conviction'"; "a habitual drunkard could be assigned a guardian or committed to an asylum only after proceedings before a probate court or something like it"; and "surety statutes required a proceeding before a justice of the peace or a

comparable officer before a bond could be ordered[.]" *Id.* The challenged statute prohibiting drug users from owning guns, by contrast, "offer[ed] an unlawful user no predeprivation process before his temporary disarmament," so it lacked historical precedent. *Id.* Similarly, Plaintiff has been disarmed without a judicial determination that he is unfit to possess a firearm. Thus, his Second Amendment rights have been violated.

Circuit precedent also supports Plaintiff's argument. In *United States v. Perez-Garcia* the Ninth Circuit upheld 18 U.S.C.S. § 3142(g)(1)-(4) because "the firearm condition is a temporary one…and the condition is imposed only upon individualized consideration by a judicial officer." *United States v. Perez-Garcia*, 96 F.4th 1166, 1181 (9th Cir. 2024). The Ninth Circuit cataloged many historical practices that allowed disarmament only after a judicial determination that someone fell within a category of persons who were prohibited from firearm ownership. *Id* at 1190. "[R]egulations that authorize disarmament only after individualized findings of dangerousness by public officials are within the heartland of legislative power to disarm those who are not law-abiding, responsible citizens." *Id*. There is no comparable practice of disarming a person due to mere allegations or arrests.

As the Supreme Court has observed, "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any

misconduct." *Schware v. Bd. of Bar Exam. of State of N.M.,* 353 U.S. 232, 241 (1957). "Actually," as the D.C. Circuit has explained, "a collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standards of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever." *Utz v. Cullinane*, 520 F.2d 467, 479 (D.C. Cir. 1975). And as this very Court has said in the context of Second Amendment litigation;

"Regarding the police reports submitted by the City Defendants, the Court is limited to examining reliable documents that demonstrate the elements composing Plaintiff's conviction. The Supreme Court has specifically held that the courts are not allowed to consider police reports when determining the elements of the crime unless the offender in some way admits the truth of the information contained in the report as part of his plea. *Shepard v. U.S.*, 544 U.S. 13, 17–19, 125 S.Ct. 1254, 1258–59, 161 L.Ed.2d 205 (2005)." *Fisher v. Kealoha*, 976 F. Supp. 2d 1200, 1213 (D. Haw. 2013), on reconsideration, 49 F. Supp. 3d 727 (D. Haw. 2014), aff'd, 855 F.3d 1067 (9th Cir. 2017). "The same analysis is applicable to the officer declarations and the probable cause statement" and "victim or witness statements" *Id* at 1213-1214. Similarly, in *Allen v. District of Columbia*, Civil Action No. 20-cv-2453 (TSC), 2023 U.S. Dist. LEXIS 60950, at *27 (D.D.C. Mar. 31, 2023) the court reviewed a

challenge to the District of Columbia's policy of denying carry permits based on certain arrests that did not lead to a conviction. In denying the motion to dismiss the Court found "the fact that Allen may have been suspected of criminal conduct in the past (but not charged) does not permit Defendants to restrict his Second Amendment rights." *Id* at *27.[1] "[T]his judicially imagined, retrospective test—

---

[1] This is in line with the treatment of the mentally ill. Currently, in virtually every state a person can only be committed against their will if they present a danger to themselves, and to others, and a judge must make the decision, after notice and a hearing. https://crsreports.congress.gov/product/pdf/R/R47571. The same rule applies for federal dispossession for mental illness. Under federal law, a person only loses his firearm rights due to an involuntary commitment if that commitment was ordered by a judge. *See Stokes v. United States DOJ*, 551 F. Supp. 3d 993, 1004 (N.D. Cal. 2021) ("there was no judicial involvement, much less "robust judicial involvement," so under *Mai*, there was no "commitment" within the meaning of Section 922(g)(4)."); *See also United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012) (holding the same) ("the right to possess arms … is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process."). "As *Rehlander* persuasively demonstrates, an *ex parte* hearing is not enough to fall within the Section 922(g)(4) prohibition; some adversary process is necessary for a "commit[ment]" under Section 922(g)(4)." *United States v. McMichael*, 350 F. Supp. 3d 647, 661 (W.D. Mich. 2018). As for the history, *See Mai v. United States*, 974 F.3d 1082, 1090 (9th Cir. 2020) (Bumatay, Dissenting from denial of en banc) (quoting, Henry Care, *English Liberties, or the Free-born Subject's Inheritance* 329 (6th ed. 1774) (noting that "judicial officials were authorized to "lock up" "lunatics" or "other individuals with dangerous mental impairments" (thereby depriving them of all rights), they were "locked up only so long as such lunacy or disorder shall continue, and no longer."")); *See also Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 706 (6th Cir. 2016) ("the common law prohibited the warrantless arrest of those thought to have lost their reason, and it allowed for the deprivation of the fundamental right to liberty or the fundamental right to control one's property only upon a valid judgment from a civil tribunal,") (citing Henry F. Buswell, *The Law of Insanity in its Application to the Civil Rights and Capacities and Criminal Responsibility of the Citizen* 17 (1885) at 26-28) (*Batchelder*, Concurring).

which often could relitigate uncharged and unproven conduct from the past—proves obscure at best and impossible at worst." *United States v. Debrow*, 2026 U.S. App. LEXIS 21976, *7 (2026).

It is constitutionally impermissible for the County to deny Mr. Janeway his Second Amendment rights based upon a burglary charge which was later dismissed. .

### 6. The County's Denial is an Ultra Vires Act and Thus Violates the Second Amendment Due to Footnote Nine in Bruen

*Bruen* specifically prohibits government officials from engaging in "the appraisal of facts, the exercise of judgment, and the formation of an *opinion*" prior to the issuance of a license. *Bruen,* 597 U.S. at 38 n.9. *Bruen* prohibits a licensing scheme to be predicated on an official's arbitrary discretion. Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007). Here, the County's denial of Mr. Janeway's permit to acquire application is ultra vires because it relies on HRS § 134-7(b) as authority to deny Mr. Janeway's application. However, HRS § 134-7(b) only prohibits those "being prosecuted" "or who has been convicted in this State or elsewhere of having committed a felony" or other prohibiting crime from owning a firearm. Nowhere in the statute does it prohibit those who have been charged with a crime and subsequently had those charges dismissed from firearm ownership. Therefore, the County's denial of Mr. Janeway's permit to acquire application was done without

statutory authority and is thus ultra vires. As ultra vires conduct is inherently arbitrary, Mr. Janeway's denial was done with impermissibly discretion. And thus, his denial and the order for him to dispose of his firearm violates the Second Amendment.

*Guido v. Suffolk Cnty.,* 2026 U.S. Dist. LEXIS 190377 (2026) found a similar denial to violate the Second Amendment. There, the Court found that Suffolk County's removal of the litigant's firearm rights for "[b]eing a suspect of a harassment violation" violated the Second Amendment. *Id* at *53. It did so because the licensing official was conferred a potentially "unbounded range of discretion" in deciding whether to revoke Plaintiff's permit. *Id* at *53. The court also found the six-month suspension imposed violated the Second Amendment. "First, it is not clear that there is any link between the actual dangerousness of the individual licensee and how long their license will remain suspended pending an investigation. Criteria determining whether and when to reinstate a pistol license must be focused on the applicant's dangerousness." Id at *60. The unbounded discretion the Chief has here, similarly violates the Second Amendment.

*Srour v. New York City*, 699 F. Supp. 3d 258 (2023) also supports this case.[2]

[2] *Srour* is red flagged on Lexis because the Second Circuit in *Srour v. N.Y.C.*, 117 F.4th 72 (2024) vacated the opinion as to the Plaintiff's for injunctive relief. Srour's claim for damages was not impacted by the Second Circuit opinion. As such, the district court's reasoning remains valid persuasive authority.

There, the Court reviewed New York City's good moral character requirement to own a long arm. *Id* at *3. There, the Court found that New York City's licensing scheme is unconstitutional "because of the magnitude of discretion afforded to City officials in denying an individual their constitutional right to keep and bear firearms, and because of Defendants' failure to show that such unabridged discretion has any grounding in our Nation's historical tradition of firearm regulation." *Id* at *64. "Each of these provisions allows for the denial of a firearm permit upon a City official's determination of the applicant's lack of "good moral character" or upon the official's finding of "other good cause"—broad and unrestrained discretionary standards which Defendants have not shown to have any historical underpinning in our country. And because that unconstitutional exercise of discretion occurs every time a licensing official applies or has applied these provisions, they each are facially unconstitutional." *Id* at *3.

Many courts have found similar levels of discretion to be unlawful. "One does not need to be an expert in American history to understand the fault inherent in a gun-permitting system that would allow a licensing body carte blanche authority to decide who is worthy of carrying a concealed weapon." *Mosby v. Devine*, 851 A.2d 1031, 1050 (R.I. 2004)). *See also People v. Zerillo*, 219 Mich. 635, 642 (1922) (striking down a Michigan statute prohibiting aliens from possessing revolvers without their Sheriff's consent). "A right is a check on state power, a check that loses

its force when it exists at the mercy of the state. Government whim is the last refuge of a precarious right." *Fisher v. Kealoha*, 855 F.3d 1067, 1072 (9th Cir. 2017) (Kozinski, J., concurring). *Bruen* already evaluated American history in specifically identifying this type of discretion as being unconstitutional. Thus, there is no need for this Court to conduct any historical review to find the challenged regulations unconstitutional. They simply are unconstitutional pursuant to *Bruen*.

It is well settled that "an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Epona, LLC v. Cty. of Ventura*, 876 F.3d 1214, 1222 (9th Cir. 2017); *See also Lakewood v. Plain Dealer Pub. Co*., 486 U.S. 750, 772 (1988) ("[a] standardless discretion also makes it difficult to detect, and protect the public from, unconstitutional viewpoint discrimination by the licensing official" and is thus unconstitutional.) *Kaahumanu v. Hawaii*, 682 F.3d 789, 807 (9th Cir. 2012) ("Adequate guiding standards are not provided here, given that DLNR may revoke a permit 'at anytime' 'for any reason,' and 'in the sole and absolute discretion of the Chairperson.'"). Using similar reasoning, Rhode Island's Supreme Court "will not countenance any system of permitting under the Firearms Act that would be committed to the unfettered discretion of an executive agency." *Gadomski v.*

*Tavares*, 113 A.3d 387, 390 (R.I. 2015) (quotation omitted). The Court held that "[t]o prevent such an occurrence, we opined that 'certain procedural steps must be employed to allow a meaningful review' of licensing decisions by this Court." *Id* at 390 (quoting *Mosby v. Devine*, 851 A.2d 1031, 1051 (R.I. 2004)). "One does not need to be an expert in American history to understand the fault inherent in a gun permitting system that would allow a licensing body carte blanche authority to decide who is worthy of carrying a concealed weapon." *Mosby*, 851 A.2d at 1050. *See also People v. Zerillo*, 219 Mich. at 642 (striking down a Michigan statute prohibiting aliens from possessing revolvers without their Sheriff's consent). Here, because the challenged regulations allow for the Chief to deny a permit to acquire based entirely on his discretion, the challenged portions of the Rules are unconstitutional.

The County's denial of Mr. Janeway's permit to acquire application was done with impermissible discretion. This Court should find that denial and the order to dispose of his firearm violates the Second Amendment. He has demonstrated a likelihood of success on the merits because the Rules confer impermissible discretion to the Chief to decide may own a firearm.

### 7. **Mr. Janeway Will Suffer Irreparable Harm**

The remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation because the right to peaceably bear arms to defend oneself is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees."" *Baird*, 81 F.4th at 1046 (quoting *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). *See also Ezell v. City of Chi.,* 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law."). This Court has found Second Amendment violations constitute irreparable harm. *Fisher v. Kealoha,* 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL.

### 8. <u>Granting the TRO/PI is in the Public Interest and Serves Equity</u>

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). When challenging government action that affects the exercise of

constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). [W]e *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest. *Baird*, 81 F.4th at 1046. On the other hand, granting an injunction will end the ongoing violation of Plaintiff's rights.

**9. Waiver of Bond is Proper and Appropriate Under These Circumstances**

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370

F.Supp.3d 1130, 1139 (C.D. Cal. 2019) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate.

**10.<u>This Court Should Consolidate Pursuant to Rule 65(a)(2)</u>**

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits*." Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794,

at *2 (D. Mont. Sep. 16, 2020). Furthermore, as established above, Plaintiff is currently suffering irreparable harm and would thus, benefit from a consolidated hearing.

## 11. Conclusion

The motion should be granted.

DATED: Honolulu, Hawaii, September __, 2026.

/s/ *Benjamin Lowenthal*
Benjamin E. Lowenthal
Law Office of Benjamin E. Lowenthal
1001 Bishop Street, Suite 2210
Honolulu, HI 96813
(808) 766-8247
Hawaii Bar No. 8645
Benjamin@bellawyer.com

*/s/ Alan Alexander Beck*
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.Alexander.Beck@gmail. com